IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:07-CV-149-D

| | | |
|---|---|---|
| OHIO CASUALTY INSURANCE COMPANY | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **ORDER** |
| FIREMEN'S INSURANCE COMPANY OF WASHINGTON, D.C., | ) ) ) ) | |
| Defendant. | ) | |

This matter comes before the court on Firemen's Insurance Company of Washington, D.C.'s, ("Firemen's") motion to compel answers and responses to its first set of interrogatories and requests for production. [DE-45]. Plaintiff Ohio Casualty Insurance Company ("Ohio Casualty") has responded. [DE-49]. The court held a hearing regarding various outstanding motions, including the current one, on January 23, 2008. After considering the oral arguments as well as the briefs, the court grants in part, and denies in part, Firemen's motion to compel.

## STATEMENT OF THE CASE

Both Ohio Casualty and Firemen's are insurance companies. Firemen's issued a primary insurance policy with a $1 million policy limit, to a restaurant and bar, East Village Bar and Grill ("East Village"), located in Raleigh, North Carolina. Ohio Casualty underwrote an excess policy of insurance for East Village that provided $25 million in liability coverage to East Village in excess of the $1 million liability coverage provided by Firemen's.

1

In November 2003, a patron who had been drinking at East Village, among other establishments, crashed his van into the middle of an already existing multi-vehicular accident, killing six people, injuring others, and causing property damage. As a result of the accident, several parties filed suit against East Village asserting, among other claims, causes of action under a theory of "dram shot" liability (collectively, the "Veeder lawsuits").

Ohio Casualty accomplished a settlement of all claims on behalf of East Village for a total of $2.348 million and paid the entire amount of the settlement. Ohio Casualty now sues Firemen's asserting that it is entitled to damages for equitable subrogation, breach of contract, bad faith, and unfair trade practices because Firemen's did not contribute to the settlement.

## DISCUSSION

Firemen's filed the instant motion to compel Ohio Casualty to provide additional information to interrogatories and requests for admission that Firemen's previously served on Ohio Casualty. Specifically, Firemen's requests the court to compel Ohio Casualty to: (1) identify all Ohio Casualty employees, agents, contractors, affiliates, representatives and counsel who oversaw, managed, reviewed, or participated in any assessment of the Veeder lawsuits; (2) identify all Ohio Casualty employees, agents, contractors, affiliates, representatives or persons acting on Ohio Casualty's behalf who reviewed, authorized or approved the settlement of any of the Veeder lawsuits; (3) produce Ohio Casualty's complete claims file regarding the Veeder lawsuits; (4) produce all correspondence, emails, faxes, meetings or telephone calls Ohio Casualty or anyone acting on Ohio Casualty's behalf had with Firemen's or a person acting on behalf of Firemen's regarding the Veeder lawsuits; (5) produce all correspondence, emails, faxes, meetings or telephone calls Ohio

2

Casualty or anyone acting on Ohio Casualty's behalf had with Dixie Trail Restaurant Group d/b/a East Village Grill regarding the Veeder lawsuits; and (6) produce all correspondence, emails, faxes, meetings or telephone calls Ohio Casualty or anyone acting on Ohio Casualty's behalf had with Ohio Casualty's counsel regarding the Veeder lawsuits.

At the January 23, 2008 hearing, Ohio Casualty represented that it had produced all relevant documents covered by Firemen's' interrogatories and requests for admissions with the exception of two main categories of documents, (1) documents covered by the attorney client privilege, and (2) internal communications within Ohio Casualty regarding the Veeder lawsuits. The court has already concluded, in an order regarding Ohio Casualty's Motion for a protective order and to quash subpoenas, [DE-32], filed simultaneously with this one, that Ohio Casualty has not waived, either explicitly or impliedly, the attorney client privilege. See Twin City Fire Ins. Co. V. Burke, 63 P.3d 282, 287 (Ariz. 2003) (noting in a case in which an excess carrier sued a primary carrier alleging bad faith for failing to settle an underlying action, that the excess carrier had not waived the attorney-client privilege). Accordingly, Ohio Casualty does not need to produce documents that are covered by the attorney-client privilege.

Nonetheless, the court grants Firemen's' motion with regard to the non-privileged documents and information that Firemen's requested in its interrogatories and requests for production, specifically Ohio Casualty's internal communications. Ohio Casualty asserts that the lawsuit involves a determination of Firemen's conduct with regard to the Veeder lawsuits and that its state of mind is not at all in issue. Accordingly, Ohio Casualty argued at that January 23, 2008 hearing that the onus of production and discovery falls almost exclusively on Firemen's, and relied on Twin City for that proposition. However, the court

3

cannot agree that discovery should flow only in one direction–from Firemen's to Ohio Casualty–without some reciprocation.

In Twin City Fire Insurance Company, the Supreme Court of Arizona decided a case involving similar facts. An excess insurer sued a primary insurer in a bad faith action because the primary insurer had failed to settle a wrongful death case within the primary carrier's policy limit. 63 P.3d at 283. The Arizona Supreme Court reviewed a lower court's order that found the excess carrier had waived its attorney-client privilege with regard to the underlying lawsuit by suing the primary insurer. The Arizona Supreme Court vacated the portion of the lower court's order that granted the motion to compel with respect to matters that are protected by the attorney-client privilege, concluding that the attorney client privilege had not been waived by the excess insurer's bringing of the lawsuit. Id. at 288. However, the Arizona Supreme Court did not conclude that because the issue to be resolved involved the primary carrier's conduct, that all discovery from the excess insurer was not relevant or did not need to be produced.

The discovery process is meant to be broad and allows for disclosure of any matter that is not privileged and relevant either to the claim or defense of any party or to the subject matter involved in the action. Fed. R. Civ. P. 26(b)(1). "The key phrase in the definition–"relevant to the subject matter involved in the pending action"–has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issued that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). In anticipation of the Firemen's' answer to Ohio Casualty's complaint and any defenses that Firemen's may raise, the court grants Firemen's' motion with regard to the unprivileged discovery that it requests.

4

## CONCLUSION

For the foregoing reasons, the court **DENIES** Defendant Firemen's' motion to compel Plaintiff Ohio Casualty to provide answers and responses to its interrogatories and requests for admissions that fall within the purview of the attorney-client privilege. However because discovery rules are given "broad a liberal treatment," the court **GRANTS** Defendant Firemen's' motion with regard to its requests for discovery of unprivileged information. Hickman v. Taylor, 329 U.S. 495, 507 (1947).

This 13th day of February 2008.

DAVID W. DANIEL
United States Magistrate Judge